are the prescribed means to compensate delayed payments under 29 U.S.C. § 216(c).

Furthermore, the Court finds that an award of prejudgment interest after liquidated damages have been denied disrupts the balance struck by Congress under the Portal-to-Portal Act, 29 U.S.C. §§ 251–62 (hereinafter referred to as the Act) between the statutory rights of employees to specified workplace conditions and the rights of employers to challenge the Act without undue sacrifice. *See Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1310–11 (5th Cir. 1976). The Act, 29 U.S.C. § 260, provides that an employer is entitled (in the discretion of the Court) to a good faith and reasonable test of the FLSA without liability beyond compensation for actual minimum and overtime wages notwithstanding the rights of employees under the FLSA. 29 U.S.C. §§ 251(a), 260; Report. *But cf.* 29 U.S.C. § 217, *Hodgson v. American Can*, 440 F.2d 916, 922 (prejudgment interest available under 29 U.S.C. § 217 notwithstanding employer good faith.) Where, as here, compensation for delay is inappropriate under 29 U.S.C. § 260, this Court has no right to subvert that statute by awarding that compensation under a different label.

The parties agree that if defendants' activities constitute an "enterprise" then $13,497.07 in unpaid compensation is due defendants' employees for the period in dispute. For the reasons given above the Court finds that the plaintiff is entitled to recover $13,497.07.

The Court adopts this memorandum opinion, the stipulation of facts and the supplemental stipulation of facts as its findings of fact and conclusions of law, and the clerk of the Court will prepare and enter the proper order.

Norman ASHCROFT, dba Querino Canyon Superette; Clyde A. Baker, dba Baker Chevron; Everett Edmunds & Wayne Harris, dba Ganado Chevron; Richard Harris, dba Two Story Trading Post; Mrs. Lester (Anna) Lee; Jim McAvoy, dba St. Michaels Towing; Dwight McGee, dba Aneth Trading Post; Armond Ortega, dba Indian Ruins; Freddy Slatton, dba Tomahawk Indian Store; Brady Smithson, dba Burnt Water Trading Post; Homer Thompson dba Tuller Cafe; and Arthur Keenan, Plaintiffs,

v.

The UNITED STATES DEPARTMENT OF INTERIOR; the Honorable Cecil D. Andrus, Secretary of the Department of Interior; and the Bureau of Indian Affairs, an agency of the United States of America and a Division of the Department of Interior, Defendants.

ATKINSON'S LTD. OF ARIZONA, an Arizona corporation, d/b/a Gilbert Ortega's Cameron Trading Post, Plaintiff,

v.

The UNITED STATES of America and the Honorable Cecil D. Andrus, Secretary of the Interior, Defendants.

Civ. Nos. 78–142, 78–396 PHX–EHC.

United States District Court, D. Arizona.

March 17, 1981.

Jon T. Kwako and David L. Norvell, Albuquerque, N.M., for plaintiff Ashcroft.

Eaves & Darling, P. A. by William J. Darling, Albuquerque, N. M., for Atkinson's.

Michael D. Hawkins, U. S. Atty. by James P. Loss, Asst. U. S. Atty., Phoenix, Ariz., for defendants.

## OPINION AND ORDER

CARROLL, District Judge.

These consolidated actions for declaratory and injunctive relief were brought by Plaintiffs as owners or lessees of property owned in fee simple by non-Indians and surrounded by the Navajo Indian Reservation, against The United States, the Secretary of Interior and the Bureau of Indian Affairs (BIA) as a result of the BIA attempting to apply and enforce against the Plaintiffs, regulations concerning trade on the Navajo Indian Reservation contained in 25 C.F.R. § 252, *et seq.*

The Defendants stipulated, pending entry of final judgment, to a restraining order halting further implementation of the regulations against plaintiffs.

Plaintiffs and defendants filed cross-motions for summary judgment, and joined in filing a Stipulated Statement of Fact (Appendix A to this Memorandum and Order), reserving the right to argue that one or more of the facts is not relevant or material to the issues before the Court.[1]

1. Defendants submitted a subsequent "Stipulated" Statement of Facts not signed on behalf of Plaintiffs, stating that Defendants had reconsidered the jointly signed Stipulation (Appendix A) and had "decided to agree to most, but not all", of the matters previously agreed to. Defendants have not moved for relief from the Stipulation they signed and accordingly, it is binding as to the facts stated therein.

The Stipulation provides that plaintiff Atkinson's Ltd of Arizona:

> ... is the owner and operator of a motel, restaurant and gift and convenience store known as Cameron Trading Post which is located near Cameron, Arizona on one of the primary highways into the east end of the Grand Canyon area. This business is operated for and does almost all of its business with visitors to the Grand Canyon area and other travelers, who are traveling interstate, or who are using the facilities of interstate commerce. The minimum number of sales that are made to Indians from the surrounding Reservation lands are an insignificant part of Atkinson's business. Atkinson's operates Cameron Trading Post under a business privilege license issued by the State of Arizona and pays all applicable business privilege and use taxes to the State.

It was further stipulated:

> Various other Plaintiffs are similarly situated on primary highway passing through the Reservation and conduct a substantial proportion of their business with tourists, transients, and other non-residents of the Reservation, who are traveling interstate, or are using the facilities of interstate commerce.

The Regulations which the BIA seeks to apply against Plaintiffs were promulgated August 29, 1975, (and have been amended on subsequent dates) pursuant to 25 U.S.C. § 261–264, the Indian Trader Statutes.

■ The first issue to be resolved is whether the Regulations properly construed, have any application to Plaintiffs' businesses conducted on fee owned land which is surrounded by the Navajo Indian Reservation. After consideration of the various regulations in Part 252 of Title 25, Code of Federal Regulations, captioned "BUSINESS PRACTICES ON THE NAVAJO, HOPI AND ZUNI RESERVATIONS", I am persuaded that such regulations have no application to Plaintiffs' businesses which are not conducted *on* the Reservation.

The stated purpose of the Regulations is

> ... to prescribe rules for the regulation of reservation businesses for the protection of Indian consumers on the Navajo, Hopi and Zuni Reservations as required by 25 U.S.C. 261, 262, 263, and 264. (§ 252.1).

and they are to apply to

> ... all persons who engage in retail business on the Navajo reservation .... (§ 252.2)

The definition of "Gross receipts" includes

> Receipts resulting from transactions concluded off the reservation that originate from the conduct and operation of the licensee's business on the reservation. (§ 252.3(f)(3)).

§ 252.3(*1*) defines a "Reservation business" as being

> a person that engaged at a fixed location or site within the exterior boundaries of the Navajo, Hopi or Zuni Reservations in the sale or purchase of goods or services....

§ 252.4 provides that "Area Director", "Superintendent" or "Tribe" as used in the regulations have reference to those "who [have] jurisdiction over the land on which a person does business or intends to do business with Indians".

The fact that it is a business located *on* a reservation which is sought to be regulated is further apparent from § 252.5, when it speaks of licensing requirements, including:

> (5) Satisfactory evidence of the general fitness of the applicant and employees of the applicant to live on the Indian reservation.

Regulation § 252.8 contemplates that all businesses will be conducted on leased tribal or trust lands:

> A license to operate a reservation business may not be issued unless the applicant has a right to use the land on which the business is to be conducted. The license period shall correspond to the period of the lease held by the licensee. The

license period in no event may exceed twenty-five (25) years.

With respect to renewal of licenses, Regulation § 252.9(a) requires that:

> ... The Area Director shall report in writing to the Commissioner on the record the applicant has made as a reservation business owner and the applicant's present fitness to reside on the Indian reservation.

The fact that the business would be located on land subject to the sovereign rights of the tribe is reflected by the provisions of § 252.11:

> (a) The regulations in this Part do not preclude the Hopi, Navajo, or Zuni tribal councils from assessing and collecting such fees or taxes as they deem appropriate from reservation businesses.
>
> (b) Nothing in the regulations of this Part may be construed to preclude tribal enforcement of these regulations or consistent tribal ordinances.

And finally, § 252.22, is further evidence that the land involved, and on which the reservation business is being conducted, is tribal or trust property:

> No licensee may lease, sublet, rent, or sell any building that the licensee occupies for any purpose to any person without the approval of the Commissioner and the consent of the tribe.

█ When Part 252 of Title 25, C.F.R., is read as a whole, it is clear the purpose of the regulations is to control business activities occurring on the three named reservations, and that the regulations supplement and enhance Tribal sovereignty as to lands over which they have jurisdiction.

█ Defendants' position would restrict consideration to § 252.3(*1*) supra, and its reference to a "fixed location or site within the exterior boundaries" of the reservation in determining the overall purposes of the regulations. This approach ignores the repeated statements in the cited regulations regarding acts *on* the reservation or on lands over which the tribe has jurisdiction.

Statutes and regulations should be read and construed as a whole, and if possible, given a harmonious comprehensive meaning, *Weinberger v. Hynson, Westcott and Dunning, Inc.*, 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973), rather than piecemeal as done by Defendants.

It is reasonable to conclude that the regulations encompassed in Part 252 of Title 25 were responsive to the decision in *Rockbridge v. Lincoln*, 449 F.2d 567 (9th Cir. 1971), wherein members of the Navajo tribe filed a class action against the Secretary of Interior, the Commissioner of Indian Affairs, and the Area Director of the Navajo Indian Reservation, seeking an order:

> ... which would (1) require the appellees to adopt adequate rules and regulations which govern traders on the reservation for the protection of the Navajos, including specification of "the kind and quantity of goods and the prices at which such goods shall be sold", and (2) require appellees to enforce those regulations and the regulations which are now in effect.

449 F.2d at 569.

The Ninth Circuit found that the district court had jurisdiction over the controversy and could, after a hearing on the merits,

> ... enter such decrees as will protect the Navajo Indians in their relationship *with the traders on the reservation* within the guidelines that Congress has prescribed.

449 F.2d at 573. (Emphasis supplied). The limitless authority over off-reservation businesses having limited relationships with individual Indian customers as proposed by defendants goes far beyond the holding in *Rockbridge*.

A determination that the regulations in 25 C.F.R., Part 252, are applicable to fee owned lands which "either existed before the creation of the Reservation or were withdrawn from the Reservation after its creation" (Appendix A) would render the regulations contrary to the governing legislation under which they were adopted. 25 U.S.C. §§ 261, 262, 263 and 264.[2]

---

**2.** There is no issue regarding Congress' power to regulate commerce with the Indian Tribes

under Article 1, Section 8, Clause 3 of the United States Constitution. Rather, the ques-

Title 25 U.S.C. § 261, enacted in 1876, provides power to "appoint traders to the Indian tribes" and for the Secretary of Interior "to make such rules and regulations as he may deem just and proper specifying the kind and quantity of goods and the prices at which such goods shall be sold to the Indians."

Section 262, enacted in 1901 for a particular tribe and reservation, was amended in 1903 to its present form:

> Any person desiring to trade with the Indians on any Indian reservation shall, upon establishing the fact, to the satisfaction of the Commissioner of Indian Affairs [Secretary of the Interior], that he is a proper person to engage in such trade, be permitted to do so under such rules and regulations as to the Commissioner of Indian Affairs may prescribe for the protection of said Indians.

Section 262, enacted in 1834, authorizes the President to take action prohibiting trade "into the country belonging to any Indian Tribe" and accordingly, can provide no support for the regulations at issue.

Finally, § 264, which was enacted in 1834, and amended in 1882, reads as follows:

> Any person other than an Indian of the full blood who shall attempt to reside in the Indian country, or on any Indian reservation, as a trader, or to introduce goods, or to trade therein, without such license, shall forfeit all merchandise offered for sale to the Indians or found in his possession, and shall moreover be liable to a penalty of $500: *Provided*, That this section shall not apply to any person residing among or trading with the Choctaws, Cherokees, Chickasaws, Creeks, or Seminoles, commonly called the Five Civi-

lized Tribes, residing in said Indian country, and belonging to the Union Agency therein: *And provided further*, That no white person shall be employed as a clerk by any Indian trader, except such as trade with said Five Civilized Tribes, unless first licensed so to do by the Commissioner of Indian Affairs, under and in conformity to regulations to be established by the Secretary of the Interior.

The four sections now appear as a part of Chapter 6 of Title 25, under the general heading "TRADERS WITH INDIANS".

■ Defendants urge that § 261, if properly construed, would authorize the adoption of rules regulating commerce with Indians, wherever it occurs, and without "territorial or geographical limitation". The Court is unwilling to adopt such a construction, in view of the specific grant of power to "appoint traders to the Indian tribes", in § 261, and the further provisions of § 262 regarding "trade with the Indians on any Indian Reservation". See *Dick v. United States*, 208 U.S. 340, 352, 28 S.Ct. 399, 402–03, 52 L.Ed. 520 (1908); *Taylor v. United States*, 44 F.2d 531 (9th Cir. 1930), *cert. denied*, 283 U.S. 820, 51 S.Ct. 345, 75 L.Ed. 1436 (1931).

■ Defendants attempt to incorporate the definition of "Indian Country" now appearing in the Federal Criminal Code, 18 U.S.C. § 1151, so as to broaden the scope of 25 U.S.C. § 264, in its reference to "Indian Country".[3] This position is untenable for several reasons. First, it ignores the definition for "Indian Country" originally set out in § 264, and repealed by the Revised Statutes. That definition, which had nothing to do with fee lands as here involved, "is not to be regarded as if it had never been

tion is whether Congress has acted so as to require businesses located off a reservation, but being surrounded by such reservation and selling to both non-Indians and Indians to obtain a traders license and subject themselves to tribal jurisdiction or be shut down, where the lands in question never had a trust status.

3. "Indian Country", as used in the criminal code, "means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding

the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way remaining through the same." 18 U.S.C. § 1151.

adopted". *Ex Parte Crow Dog*, 109 U.S. 556, 561, 3 S.Ct. 396, 399, 27 L.Ed. 1030 (1883). Further,

> ... It is an admitted rule in the interpretation of statutes that clauses which have been repealed may still be considered in construing the provisions that remain in force....

*Id.*

The Federal Criminal Code, in defining "Indian Country", limits its use to Chapter 53 of Title 18, and the crimes and activities described in that chapter:

> Except as otherwise provided in sections 1154 and 1156 of this title, the term 'Indian Country', *as used in this chapter*, means (a) all land within the limits of any Indian reservation ....

18 U.S.C. § 1151 (Emphasis supplied).

Accordingly, the Court finds that Title 18, and particularly the definition of "Indian Country" in § 1151, does not provide authority for the BIA to license Indian traders wherever located. Before such definition is incorporated into licensing authority in Title 25 there should be a clear expression of such intention by Congress—and there is no such intention, express or implied, in this instance.[4]

The Court therefore finds and concludes:

1. The businesses conducted by Plaintiffs as specified in the Stipulation of the parties are not reservation businesses within the declared purposes of Part 252, 25 C.F.R.

2. Plaintiffs' businesses are not located in "Indian Country", within the meaning of Title 25, United States Code.

3. 25 C.F.R. § 252, *et seq.*, do not apply to Plaintiffs.

The foregoing Opinion in its entirety constitutes the findings of fact and conclusions of law in this consolidated proceeding.

Therefore,

IT IS ORDERED that a Permanent Injunction shall issue in accordance with the foregoing Opinion.

---

4. For a statute in which Congress has expressly adopted the § 1151 definition of 'Indian Country', see 25 U.S.C. § 1903(10) relating to Indian Child Welfare.